# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Honorable Tonianne J. Bongiovanni |
| v. | Mag. No. 17-5009 (TJB) |
| YOCHEVED NUSSBAUM,<br>a/k/a "Chaya Nussbaum"<br>a/k/a "Yocheved Jaffe"<br>and<br>SHIMON NUSSBAUM,<br>a/k/a "Shimi Nussbaum" | **CRIMINAL COMPLAINT** |

I, Michael Farina, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this Complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

Michael Farina, Special Agent
Federal Bureau of Investigation

**RECEIVED**

**JUN 23 2017**

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Sworn to before me and subscribed in my presence,

June 23, 2017       at       Trenton, New Jersey
Date                          City and State

Honorable Lois H. Goodman
United States Magistrate Judge
Name and Title of Judicial Officer            Signature of Judicial Officer

## ATTACHMENT A

From at least as early as April 6, 2011, through on or about August 31, 2014, in Ocean County, in the District of New Jersey, and elsewhere, the defendants,

YOCHEVED NUSSBAUM,
a/k/a "Chaya Nussbaum,"
a/k/a "Yocheved Jaffe,"
and
SHIMON NUSSBAUM,
a/k/a "Shimi Nussbaum,"

did knowingly and intentionally conspire with each other to commit an offense against the United States, namely, theft of government funds, by knowingly and willfully embezzling, stealing, purloining, and converting to their own use money and a thing of value of the United States and departments and agencies thereof, namely, the Department of Health and Human Services, the Department of Agriculture, and the Department of Housing and Urban Development, the value of which exceeded $1,000, contrary to Title 18, United States Code, Section 641.

In violation of Title 18, United States Code, Section 371.

## ATTACHMENT B

I, Michael Farina, am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have knowledge of the facts set forth below as a result of my participation in this investigation as well as from my review of reports from, and discussions with, other law enforcement personnel. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged. The conversations described within are partial, non-verbatim summaries, and are related in substance and in part.

### General Background – the Defendants and the Federal Programs

1. YOCHEVED NUSSBAUM and SHIMON NUSSBAUM are a married couple residing in Lakewood, a municipality located in Ocean County, New Jersey.

Medicaid Health Benefits

2. Medicaid is a jointly funded, federal-state health insurance program that provides certain health benefits to the disabled and individuals and families with low incomes and resources. Medicaid was created in 1965, through Title XIX of the Social Security Act. *See* Title 42, United States Code, Section 1396 *et seq*. In New Jersey, Medicaid is administered by the New Jersey Department of Human Services.

3. The federal Centers for Medicare and Medicaid Services, previously known as the Health Care Financing Administration, monitors the state-run Medicaid programs and establishes requirements for service delivery, quality, funding, and eligibility standards. The Centers for Medicare and Medicaid Services is a federal agency within the United States Department of Health and Human Services.

4. In New Jersey, a private, third-party administrator receives and processes bills from Medicaid providers, and, at other times, from managed care organizations. The money to pay for such medical services originates from and belongs to the State of New Jersey and the Federal Government. The Federal Government provides matching funds to the State of New Jersey through the United States Department of Health and Human Services.

5. Whether a person is entitled to Medicaid benefits, and, if entitled, the amount to which that person is entitled, is based, in part, on reported household income and size. That information is compared to Medicaid eligibility guidelines, which are established by the State and tied to the federal poverty level. These guidelines are published to the general

public at least once each year by the State. Individuals who make more than the income limit for their reported household size are not eligible for Medicaid benefits.

6. In New Jersey, the Division of Medical Assistance & Health Services administers the state and federally funded Medicaid program known as NJ FamilyCare.

7. Individuals apply for Medicaid benefits, also known as NJ FamilyCare benefits, by completing a paper and/or electronic NJ FamilyCare application at a county welfare office or directly through the New Jersey Department of Human Services. This application requires the individual to truthfully and accurately disclose their income information for all family members.

8. By signing the NJ FamilyCare application, applicants certify that the information provided in the application is true. In addition, applicants attest that they have read and understand the NJ FamilyCare program "Rights and Responsibilities," one of which is that participants are required to notify NJ FamilyCare immediately upon any change in family income.

Section 8 Housing Assistance

9. The Section 8 Rental Certificate program ("Section 8") is a federally funded housing assistance program administered by the Department of Housing and Urban Development ("HUD") that increases affordable housing choices for very low-income households by allowing families to choose privately owned rental housing. *See* Title 42 United States Code Ch. 8, §§ 8(b)(1) and 8(d)(2); 24 C.F.R. §§ 982-983.

10. In order to receive rental assistance through Section 8, families apply to a local housing authority for a Section 8 certificate. The local housing authority pays the landlord the difference between 30 percent of the household's adjusted income and the unit's rent.

11. HUD contracts with local housing authorities to provide Section 8 voucher assistance to very low-income households, households already assisted under the 1937 U.S. Housing Act, and households with incomes up to 80 percent of area median that qualify to receive a voucher in connection with other HUD programs. HUD annually determines median income levels for each area.

12. Individuals who wish to receive Section 8 benefits in Lakewood, New Jersey, may apply for benefits by submitting an application to the Lakewood Township Residential Assistance Program ("LTRAP"), which receives federal funding from HUD.

13. Individuals applying for Section 8 vouchers through LTRAP must truthfully disclose all sources of income on their Section 8 application. By signing the application, applicants acknowledge their understanding that, "failure to report all sources of income may result in termination of rental assistance benefits."

SNAP Food Assistance

14. Pursuant to the Food Stamp Act of 1977, as amended, 7 U.S.C. §§ 2011-32, and its accompanying regulations, 7 C.F.R. §§ 271-85, eligible low income persons can obtain Supplemental Nutrition Assistance Program ("SNAP") benefits contained on Electronic Benefits Transfer cards. SNAP benefits may only be used to purchase food items.

15. In New Jersey, individuals may obtain SNAP benefits in a variety of ways, including through submission of an application to the appropriate county Board of Social Services. The SNAP application requires applicants to list truthfully all sources of income. By signing the application, applicants acknowledge their understanding that knowingly providing false income information may be grounds for federal criminal prosecution as well as termination of benefits.

## Object of the Conspiracy

16. It was an object of the conspiracy for YOCHEVED NUSSBAUM and SHIMON NUSSBAUM to fraudulently obtain Medicaid health benefits, Section 8 housing benefits, and SNAP food assistance benefits, for themselves and their minor children by: (1) submitting false applications to the state of New Jersey in which total family income was underreported; (2) failing to notify the state of New Jersey upon the receipt of additional and significant income; and (3) continuing to utilize program benefits when they clearly did not qualify for the programs.

## Manner and Means of the Conspiracy

17. In furtherance of the conspiracy, and to effect its objects, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

**Unreported Business Interests**

18. In the years prior to and during the conspiracy, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM created a variety of companies, nominally run by relatives, but actually controlled by YOCHEVED NUSSBAUM and SHIMON NUSSBAUM. YOCHEVED NUSSBAUM and SHIMON NUSSBAUM opened various bank accounts in the names of these entities, and then used funds from these accounts to cover their personal expenses. In applying for Medicaid, Section 8 and SNAP benefits,

YOCHEVED NUSSBAUM and SHIMON NUSSBAUM failed to report the income derived from these business accounts, thereby grossly underreporting their true monthly and annual income, and thereby receiving federal assistance that they were clearly ineligible to receive.

Clothing Company 1

19. Clothing Company 1 was registered as a for-profit corporation with the New Jersey Division of Revenue on or about July 18, 2006. Individual A, a relative of YOCHEVED NUSSBAUM, was registered as the agent and sole member of Clothing Company 1 at that time. The registered business address for Clothing Company 1 was the home address of YOCHEVED NUSSBAUM and SHIMON NUSSBAUM.

20. On or about July 21, 2006, a bank account for Clothing Company 1 (the "Clothing Company Account") was opened at First Washington State Bank, now known as Fulton Bank. YOCHEVED NUSSBAUM and SHIMON NUSSBAUM were both listed as signatories on the Clothing Company Account. Included among the account opening documents for the Clothing Company Account were a corporate resolution signed by SHIMON NUSSBAUM as President of Clothing Company 1, and a power of attorney, signed by Individual A, granting operational and fiduciary control over Clothing Company 1 to SHIMON NUSSBAUM.

Daycare Company 1

21. On or about November 24, 2009, Daycare Company 1 was registered as a limited liability corporation with the New Jersey Division of Revenue. Individual B, a relative of SHIMON NUSSBAUM, was registered as the agent and sole member of Daycare Company 1 at that time.

22. On or about November 27, 2009, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM opened a business checking account at Fulton Bank in the name of Daycare Company 1 (the "Daycare Company Account"). The account opening documentation lists Individual B as an authorized user. However, the only signatures on the account opening documents are those of YOCHEVED NUSSBAUM and SHIMON NUSSBAUM. YOCHEVED NUSSBAUM also signed the Certificate of Authorization on behalf of Daycare Company 1.

23. On or about January 12, 2010, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM became the sole signatories on the Daycare Company Account. On or about November 22, 2011, SHIMON NUSSBAUM was removed as a signatory on the Daycare Company

Account, and a revised Certificate of Authorization was signed by YOCHEVED NUSSBAUM at that time. Although SHIMON NUSSBAUM was nominally uninvolved in the Daycare Company Account from that time forward, YOCHEVED NUSSBAUM retained access.

Autism Association 1

24. On or about March 29, 2011, Autism Association 1 was registered as a non-profit corporation with the New Jersey Division of Revenue, with a listed purpose of providing therapeutic services to children with autism. YOCHEVED NUSSBAUM was listed as a member of the board of trustees, and her home address was listed as the office address for Autism Association 1.

25. On or about March 30, 2011 YOCHEVED NUSSBAUM opened a bank account for Autism Association 1 at Fulton Bank ("AA Account 1751"). On or about January 15, 2012, YOCHEVED NUSSBAUM opened another bank account for Autism Association 1 at Fulton Bank ("AA Account 4146"). YOCHEVED NUSSBAUM was the sole signatory for the accounts when she opened them.

Real Estate Company 1

26. On or about March 31, 2011, Real Estate Company 1 was registered as a limited liability company with the New Jersey Division of Revenue for the specified purpose of property development. Individual B – the same relative of SHIMON NUSSBAUM who was registered as the agent and sole member of Daycare Company 1 – was registered as the agent for Real Estate Company 1 at that time.

27. On or about October 12, 2012, Individual B executed a power of attorney giving SHIMON NUSSBAUM and YOCHEVED NUSSBAUM operational and fiduciary control over Daycare Company 1 and Real Estate Company 1.

28. On or about November 14, 2012, SHIMON NUSSBAUM, acting as power of attorney for Individual B, opened a business bank account at Fulton Bank in the name of Real Estate Company 1 (the "Real Estate Company Account").

**2011 Fraudulent Applications**

29. On or about April 6, 2011 YOCHEVED NUSSBAUM signed an NJ FamilyCare application in which she requested health insurance benefits for herself, SHIMON NUSSBAUM, and their five minor children. On the application, YOCHEVED NUSSBAUM stated that the family's only income was her salary of approximately

7

$1,100 per month, derived from her employment at Clothing Company 1. The application was sent via U.S. Mail to the Ocean County Board of Social Services, which received it on or about April 14, 2011.

30. On or about April 27, 2011 the Ocean County Board of Social Services sent to YOCHEVED NUSSBAUM a letter stating that her family was eligible for Medicaid health insurance benefits under the NJ FamilyCare program. The letter advised YOCHEVED NUSSBAUM that, "Any changes in household income or living arrangements should be reported to our office without delay."

31. On or about March 8, 2011, YOCHEVED NUSSBAUM signed a SNAP application and submitted it to the Ocean County Board of Social Services. The only source of income reported on the application was YOCHEVED NUSSBAUM's purported salary of approximately $1,000 to $1,050 per month from Clothing Company 1. In signing the 2011 SNAP application, YOCHEVED NUSSBAUM certified, as stated on the application itself, that all information she had provided on the application was true. She further acknowledged her understanding that if she knowingly provided incorrect information, her SNAP benefits could be terminated, and she could be subject to criminal prosecution.

32. On or about October 27, 2011 YOCHEVED NUSSBAUM and SHIMON NUSSBAUM signed a Section 8 application and submitted it to LTRAP. The only source of income reported on the application was YOCHEVED NUSSBAUM's purported Clothing Company 1 salary of approximately $1,100 a month. Immediately above the signatures of SHIMON NUSSBAUM and YOCHEVED NUSSBAUM, the 2011 Section 8 application states, "I understand that failure to report all sources of income may result in termination of rental assistance benefits."

33. Contrary to the statements YOCHEVED NUSSBAUM and SHIMON NUSSBAUM made in their 2011 NJ FamilyCare, SNAP and Section 8 applications, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM received substantial income beyond YOCHEVED NUSSBAUM's purported Clothing Company 1 salary during the year 2011.

34. For example, during the 2011 calendar year, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM used the Clothing Company Account for personal expenses totaling over $110,000. These personal expenses included, but were not limited to:

   a. Approximately $100,000, used by SHIMON NUSSBAUM to fund the April 2011 purchase of a parcel of land by Real Estate Company 1;

      b. Payments totaling approximately $9,000 used to pay off balances on YOCHEVED NUSSBAUM and SHIMON NUSSBAUM's personal US Bank credit cards; and

      c. Premium payments of approximately $1,880 for a life insurance policy on SHIMON NUSSBAUM.

35. Additionally, during the 2011 calendar year, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM used the Daycare Company Account for personal expenses totaling approximately $29,000. These personal expenses included, but were not limited to:

      a. Tuition payments of approximately $21,000 to various educational institutions attended by the Nussbaum children;

      b. Payments totaling over approximately $7,000 to pay off balances on YOCHEVED NUSSBAUM and SHIMON NUSSBAUM's personal US Bank credit cards; and

      c. Payments totaling approximately $1,100 for a Honda automobile leased to YOCHEVED NUSSBAUM and SHIMON NUSSBAUM.

36. None of the above approximately $110,000 in Clothing Company Account funds or approximately $29,000 in Daycare Company Account funds used by YOCHEVED NUSSBAUM and SHIMON NUSSBAUM during the 2011 calendar year were reported on the 2011 NJ FamilyCare, SNAP or Section 8 applications, or on any future NJ FamilyCare, SNAP or Section 8 applications. Nor did YOCHEVED NUSSBAUM and SHIMON NUSSBAUM notify the NJ FamilyCare, SNAP or Section 8 programs of their receipt of this significant income at any time during 2011.

37. When income from the above and other sources is accounted for, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM received a total income of approximately $265,492 in 2011.

38. In 2011, the maximum annual income which would allow YOCHEVED NUSSBAUM, SHIMON NUSSBAUM and their minor children to receive Medicaid benefits was approximately $118,335. The maximum annual income which would allow them to receive Section 8 benefits was approximately $79,650. The maximum annual income which would allow them to receive SNAP benefits was approximately $43,260.

39. As a result, in 2011, YOCHEVED NUSSBAUM, SHIMON NUSSBAUM and their minor children received Medicaid, SNAP and Section 8 benefits of approximately $52,168 to which they were not entitled.

**2012 Fraudulent Applications**

40. On or about April 17, 2012 YOCHEVED NUSSBAUM signed an NJ FamilyCare application in which she requested health insurance benefits for herself, SHIMON NUSSBAUM, and their five children. On the application, YOCHEVED NUSSBAUM stated that the family's only income was her salary of approximately $1,100 per month from Clothing Company 1. The application was received by the Ocean County Board of Social Services on or about April 23, 2012.

41. On or about February 6, 2013, the Ocean County Board of Social Services sent a letter to YOCHEVED NUSSBAUM confirming that her family was eligible for Medicaid health insurance benefits under the NJ FamilyCare program. The letter again advised YOCHEVED NUSSBAUM that, "Any changes in household income or living arrangements should be reported to our office without delay."

42. On or about April 28, 2012, YOCHEVED NUSSBAUM signed a SNAP application and submitted it to the Ocean County Board of Social Services. The only source of income reported on the application was YOCHEVED NUSSBAUM's purported salary of approximately $1,100 per month from Clothing Company 1. In signing the 2012 SNAP application, YOCHEVED NUSSBAUM certified, "under penalty of perjury," that the income information she provided in her application was "correct and complete, to the best of [her] knowledge."

43. On or about October 23, 2012 YOCHEVED NUSSBAUM and SHIMON NUSSBAUM signed a Section 8 application and submitted it to LTRAP. The only source of income reported on the application was YOCHEVED NUSSBAUM's approximately $1,100 monthly salary from Clothing Company 1.

44. Contrary to the statements YOCHEVED NUSSBAUM and SHIMON NUSSBAUM made in their 2012 NJ FamilyCare, SNAP and Section 8 applications, SHIMON NUSSBAUM and YOCHEVED NUSSBAUM received substantial income beyond YOCHEVED NUSSBAUM's purported Clothing Company 1 salary during the year 2012.

45. For example, from in or about November 2012 to in or about December 2012, SHIMON NUSSBAUM and YOCHEVED NUSSBAUM used the Real Estate Company Account for numerous personal expenses. These personal expenses included, but were not limited to:

    a. Payments of approximately $16,000 on the mortgage originated by YOCHEVED NUSSBAUM and SHIMON NUSSBAUM for their residence in Lakewood, New Jersey; and

    b. A payment of approximately $4,700 in property taxes on the parcel of Ocean County land purchased by SHIMON NUSSBAUM in April 2011 via Real Estate Company 1.

46. During the 2012 calendar year, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM also used the Daycare Company Account for various personal expenses. These personal expenses included, but were not limited to:

    a. Tuition payments of approximately $13,000 to various educational institutions attended by the Nussbaum children;

    b. Payments of approximately $4,000 made to pay off YOCHEVED NUSSBAUM and SHIMON NUSSBAUM's personal US Bank credit cards;

    c. Payments of approximately $5,000 for Honda automobiles leased to YOCHEVED NUSSBAUM and SHIMON NUSSBAUM.

47. During the 2012 calendar year, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM also used the business accounts associated with Autism Association 1 – AA Account 1751 and AA Account 4146 – for various personal expenses. These personal expenses included, but were not limited to:

    a. Tuition payments of approximately $4,700 to various educational institutions attended by the Nussbaum children;

    b. Payments of approximately $3,986 made to pay off YOCHEVED NUSSBAUM and SHIMON NUSSBAUM's personal US Bank credit cards; and

    c. A check in the amount of approximately $10,000 made payable to an attorney who was then representing YOCHEVED NUSSBAUM and SHIMON NUSSBAUM in a civil matter.

48. During the 2012 calendar year, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM also used the Clothing Company Account for various personal expenses. These personal expenses included, but were not limited to:

    a. A check in the amount of approximately $20,000 made payable to a law firm that was then representing YOCHEVED NUSSBAUM and SHIMON NUSSBAUM in a civil matter;

  b. Premium payments of approximately $1,880 for a life insurance policy on SHIMON NUSSBAUM; and

  c. Payments of approximately $3,000 made to pay off YOCHEVED NUSSBAUM and SHIMON NUSSBAUM's personal US Bank credit cards.

49. None of the above Real Estate Company Account funds, Daycare Company Account funds, AA Account 1751 funds, AA Account 4146 funds, or Clothing Company Account funds used for the personal benefit of YOCHEVED NUSSBAUM and SHIMON NUSSBAUM were reported on the NUSSBAUMS' 2012 NJ FamilyCare, SNAP or Section 8 applications, or on any future NJ FamilyCare, SNAP or Section 8 applications. Nor did YOCHEVED NUSSBAUM and SHIMON NUSSBAUM notify the NJ FamilyCare, SNAP or Section 8 programs of this significant income at any time after filing their 2012 applications.

50. When income from the above and other sources is accounted for, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM received a total income of approximately $198,535 in 2012.

51. In 2012, the maximum annual income which would allow YOCHEVED NUSSBAUM, SHIMON NUSSBAUM and their minor children to receive Medicaid benefits was approximately $122,255. The maximum annual income which would allow them to receive Section 8 benefits was approximately $82,000. The maximum annual income which would allow them to receive SNAP benefits was approximately $43,956.

52. As a result, in 2012, YOCHEVED NUSSBAUM, SHIMON NUSSBAUM and their minor children received Medicaid, Section 8, and SNAP benefits of approximately $52,917 to which they were not entitled.

## 2013 Fraudulent Applications

53. On or about April 22, 2013 YOCHEVED NUSSBAUM signed an NJ FamilyCare application in which she requested health insurance benefits for herself, SHIMON NUSSBAUM, and their five children. On the application, YOCHEVED NUSSBAUM stated that the family's only income was her salary of approximately $1,500 per month from Daycare Company 1. The application was received by the Ocean County Board of Social Services on or about April 24, 2013.

54. On or about June 11, 2013, the Ocean County Board of Social Services sent a letter to YOCHEVED NUSSBAUM confirming that her family was eligible for Medicaid health insurance benefits under the NJ FamilyCare program. The letter again advised

YOCHEVED NUSSBAUM that, "Any changes in household income or living arrangements should be reported to our office without delay."

55. On or about April 26, 2013, YOCHEVED NUSSBAUM signed a SNAP application and submitted it to the Ocean County Board of Social Services. The only source of income reported on the application was YOCHEVED NUSSBAUM's purported salary of approximately $1,358 per month from Daycare Company 1. In signing the 2012 SNAP application, YOCHEVED NUSSBAUM certified, "under penalty of perjury," that the income information she provided in her application was "correct and complete, to the best of [her] knowledge."

56. On or about November 25, 2013 YOCHEVED NUSSBAUM and SHIMON NUSSBAUM signed a Section 8 application and submitted it to LTRAP. The only source of income reported on the application was YOCHEVED NUSSBAUM's approximately $1,500 monthly salary from Daycare Company 1.

57. Contrary to the statements YOCHEVED NUSSBAUM and SHIMON NUSSBAUM made in their 2013 NJ FamilyCare, SNAP and Section 8 applications, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM received substantial income beyond YOCHEVED NUSSBAUM's purported Daycare Company 1 salary during the year 2013.

58. For example, from in or about January 2013 to in or about November 2013, approximately $1,745,529 was deposited into the Real Estate Company Account over which SHIMON NUSSBAUM and YOCHEVED NUSSBAUM exercised control. These funds were deposited into the Real Estate Company Account via a series of checks in amounts ranging from approximately $45,000 to approximately $1,000,000. The payor of each of the checks was Daycare Company 1, and each check was made payable to, SHIMON NUSSBAUM's relative, Individual B.

59. During the 2014 calendar year, while YOCHEVED NUSSBAUM and SHIMON NUSSBAUM were still receiving benefits based on their fraudulent 2013 NJ FamilyCare, SNAP and Section 8 applications, they used the Real Estate Company Account for personal expenses. These personal expenses included, but were not limited to:

   a. A check in the amount of approximately $19,000 cashed by SHIMON NUSSBAUM;

   b. Approximately $1,200,00 in payments to federal and state tax authorities for income generated by Daycare Company 1; and

   c. A check in the amount of approximately $250,000 used by SHIMON NUSSBAUM to invest in a commercial real estate venture in Chicago, Illinois.

60. During the 2013 calendar year, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM also used the Daycare Company Account for various personal expenses. These personal expenses included, but were not limited to:

   a. Tuition payments of approximately $29,000 to various educational institutions attended by the Nussbaum children; and

   b. Payments of approximately $8,000 for Honda automobiles leased to YOCHEVED NUSSBAUM and SHIMON NUSSBAUM.

61. None of the above Real Estate Company Account funds or Daycare Company Account funds used for the personal benefit of YOCHEVED NUSSBAUM and SHIMON NUSSBAUM, were reported on the NUSSBAUMS' 2013 NJ FamilyCare, SNAP or Section 8 applications, or on any future NJ FamilyCare, SNAP or Section 8 applications. Nor did YOCHEVED NUSSBAUM and SHIMON NUSSBAUM notify the NJ FamilyCare, SNAP or Section 8 programs of this significant income at any time after filing their 2013 applications.

62. When income from the above and other sources is accounted for, YOCHEVED NUSSBAUM and SHIMON NUSSBAUM received a total income of approximately $1,800,000 in 2013.

63. On or about April 8, 2014 the New Jersey State Medicaid Fraud Division sent to YOCHEVED NUSSBAUM and SHIMON NUSSBAUM a letter informing them that an investigation into their Medicaid eligibility had been initiated.

64. YOCHEVED NUSSBAUM continued receiving and using SNAP benefits through in or about May 2014.

65. YOCHEVED NUSSBAUM and SHIMON NUSSBAUM continued receiving and using Section 8 benefits through in or about July 2014.

66. On or about July 30, 2014, SHIMON NUSSBAUM contacted the NJ FamilyCare program and advised them that he wished to terminate his Medicaid coverage. The termination of Medicaid benefits went into effect on or about August 31, 2014.

67. Tellingly, during the calendar year 2015, after YOCHEVED NUSSBAUM and SHIMON NUSSBAUM had stopped applying for and receiving Medicaid, SNAP and Section 8 benefits, they received an additional approximately $1,500,000 in checks from Daycare

Company 1 made payable to Individual B. Rather than deposit this money into the Real Estate Company Account, as they had done in 2013, they deposited these funds directly into their personal bank account at Fulton Bank.

68. In 2013, the maximum annual income which would allow YOCHEVED NUSSBAUM, SHIMON NUSSBAUM and their minor children to receive Medicaid benefits was approximately $124,635. The maximum annual income which would allow them to receive Section 8 benefits was approximately $81,555. The maximum annual income which would allow them to receive SNAP benefits was approximately $46,296.

69. Therefore, during the 2013 and 2014 calendar years, YOCHEVED NUSSBAUM, SHIMON NUSSBAUM and their minor children received Medicaid, Section 8, and SNAP benefits of approximately $76,677 to which they were not entitled.

70. A detailed review of NJ FamilyCare, Section 8 and SNAP program records reveals that from the 2011 calendar year through in or about August 2014, YOCHEVED NUSSBAUM, SHIMON NUSSBAUM and their minor children received approximately $178,762 in Medicaid, Section 8 and SNAP benefits to which they were not entitled.